Julie A. NELSON, Appellant,

v.

John Estes HOUSE, Karen Ann Pitoscia, et al., Independent School District No. 709, Diane Williams, Respondents.

No. C3-86-1754.

Court of Appeals of Minnesota.

March 24, 1987.

Review Denied May 18, 1987.

Nicholas J. Zuber, Duluth, for Julie A. Nelson.

Terry C. Hallenbeck, Duluth, for John Estes House.

Richard H. Krochock, Minneapolis, for Karen Ann Pitoscia, et al.

John D. Kelly, Duluth, for Independent School Dist. No. 709.

Robert H. Magie, III, Duluth, for Diane Williams.

Heard, considered and decided by SEDGWICK, P.J., and LANSING, and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal questions whether the purchase of private liability insurance by a municipal employee waives the municipality's statutory liability limits. The trial court found no waiver had occurred in the circumstances of this case and the injured party appeals. We affirm.

## FACTS

Appellant Julie Nelson and several other Denfeld High School cheerleaders were injured in August 1980 when the van they jured in August 1980 when the van they occupied while on a school-sponsored activity collided with another vehicle. Respondent Diane Williams is an employee of respondent Independent School District # 709 and was the cheerleaders' faculty advisor.

Several of the cheerleaders sued the school district, Williams, John House (the driver of the other vehicle), and Karen and Frank Pitoscia (the driver and owner of the van). The cases proceeded without consolidation. A jury heard plaintiff Robin Verhel's case and found the school district, Williams, and each of the other defendants causally negligent, but apportioned no percentage of the causal negligence to Williams. The jury apportioned 35 percent to the school district.

The Minnesota Supreme Court held the verdict reconcilable, concluding: "Whatever duty of care Williams had with regard to supervision of the cheerleaders existed because of her employee status." *Verhel v. Independent School District # 709*, 359 N.W.2d 579, 592 (Minn.1984). Nelson and other plaintiffs may invoke collateral estoppel with respect to all liability and apportionment issues decided in *Verhel*, or may separately litigate all liability issues. *See Bogenholm v. House*, 388 N.W.2d 402, 408 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Aug. 13, 1986).

In *Verhel*, the school district owed damages of $88,292, which its liability insurer satisfied. By statute, the liability of the school district and its employees for all claims arising out of the accident was limited to $300,000, an amount equal to the limits of the school district's insurance policy. *See* Minn.Stat. § 466.04, subds. 1(b) and 1b (1980).

Williams is privately insured by a $500,000 individual liability policy. Appellant Nelson argued Williams waived the statutory limitation of liability by purchasing the separate policy. The trial court rejected the argument and entered summary judgment for Williams, finding that the statutory limitation is waived only when excess liability insurance is purchased by the school district.

## ISSUE

Did Williams' purchase of a separate liability policy waive the statutory limits on municipal tort liability?

## ANALYSIS

Municipal[1] tort immunity has been abolished in Minnesota, subject to numerous exceptions. Minn.Stat. §§ 466.02–.03, (1986) (sections of the Municipal Tort Liability Act). The exceptions are specified in section 466.03 and include immunity for a municipality's discretionary acts. *Id.* § 466.03, subd. 6. Where immunity does not exist, the statute nevertheless limits the liability of a municipality and its employees to $300,000 for any number of claims arising out of a single occurrence. Minn.Stat. §§ 466.04, subds. 1(b) and 1b (1980).

The statute also permits the "governing body of any municipality" to purchase insurance against liability. *Id.* § 466.06 (1986). The insurance may cover "torts specified in section 466.03 for which the municipality is immune from liability" and may cover liability "in excess of the limit of liability imposed by section 466.04." *Id.* The procurement of "such insurance," however, "constitutes a waiver of the defense of governmental immunity to the extent of the liability stated in the policy." *Id.*

■ Appellant interprets section 466.06 to also waive the school district's immunity when an employee purchases private liability insurance. The Minnesota Supreme Court rejected a similar argument under the statute limiting the liability of the State of Minnesota. *See Cairl v. State*, 323 N.W.2d 20, 26–27 (Minn.1982) (construing Minn.Stat. § 3.736, subd. 8 (1980)). The employee in *Cairl* was immune from liability because his allegedly negligent act was discretionary. *Id.* at 23–24. As here, the question of waiver arose because the employee had private liability insurance. There, as here, the alleged fault of the

employee was solely in an employment capacity.

The court held:

> By their very terms, [the waiver provisions in both] the State Tort Claims Act and the Municipal Tort Liability Act apply only to a "state agency" or a "governing body of a municipality." [citation omitted]. Specifically, the purchase of liability insurance only by such entities constitutes a waiver of immunity to the extent of coverage provided.

*Id.* at 26–27. The court concluded: "the purchase of professional liability insurance by [the state employee], ostensibly to cover his professional activities outside of [his state employment], did not constitute a waiver of immunity." *Id.* at 27.

Appellant claims *Cairl* is not controlling because the insurance Williams purchased covers her job-related activities as well as outside activities. This distinction disregards the primary holding in *Cairl*: waiver provisions are triggered only by public purchase of insurance. This premise, not the scope of the employee's private insurance, appears to underpin *Cairl*'s rejection of waiver by private insurance.

Both parties distinguish waiver of immunity from waiver of limits of liability, and appellant points out that *Cairl* involved only the former. *See id.* at 26 (question is whether an employee's purchase of liability insurance waived discretionary immunity).[2] Noting this distinction, however, the parties reach opposite conclusions. Appellant claims limits of liability may be waived even if immunity may not, because the former rule is a less significant public policy; respondent contends there is no statutory basis for any waiver of limits of liability.

■ The statute does not support either inference. Section 466.06 governs waiver of those benefits of immunity that are still preserved, whether they constitute total

---

1. The definition of municipality includes a school district. Minn.Stat. § 466.01, subd. 1 (1986).

2. Neither party claims the school district or Williams are protected by discretionary immunity.

immunity or a limit on liability. Minn.Stat. § 466.06. It specifically mentions both section 466.03 immunities and section 466.04 limits of liability. Each situation is equally affected by the statute and we find nothing to contradict the conclusion that each is governed by the rule on private policies set out in *Cairl.*

Finally, appellant argues the insurance purchased by Williams is specifically denoted "excess" insurance, and thus represents a kind of policy to which *Cairl* should not be applied. Appellant argues that the excess coverage by its terms provides benefits over and above the employer's coverage. We disagree. Williams' insurance affords excess coverage for many other types of claims for which Williams might be otherwise insured, including some attorney fees, loss of personal property, and certain medical, disability, and death benefits. We find no reason to apply *Cairl* in a way that exempts excess insurance from the general rule on privately procured insurance.

Independent of section 466.06, appellant asserts it is in this court's power to define the scope of immunity law and that there is lawful cause to find a waiver of or limited liability immunity in the circumstances here. Appellant cites cases where the power to waive immunity by purchasing insurance was found to be implicit in the statute empowering municipalities to purchase such insurance. *See Geislinger v. Village of Watkins,* 269 Minn. 116, 123, 130 N.W.2d 62, 67 (1964); *Schoening v. United States Aviation Underwriters, Inc.,* 265 Minn. 119, 128–29, 120 N.W.2d 859, 865 (1963). Appellant asserts the only contrary results are in cases where public bodies had purchased insurance but did not have the statutory authority to take that action. *See High-Grade Oil Co., Inc. v. Sommer,* 295 N.W.2d 736, 739 (S.D.1980).

The cited Minnesota cases applied sovereign immunity statutes that authorized the public body to purchase liability insurance. When "public funds [are] spent to procure the insurance policy, [the injured party] should be given the benefit of the policy."

*Johnson v. County of Nicollet,* 387 N.W.2d 209, 213 (Minn.Ct.App.1986) (Foley, J. *concurring specially* ). This concern for the public welfare does not arise when no public funds are expended, and appellant cites no cases where immunity was waived by the purchase of private insurance. Appellant has not presented a basis for the development of a body of waiver law outside the statutory scheme, and we find no precedent to create a doctrine of waiver by the purchase of private insurance.

## DECISION

 The trial court properly granted summary judgment on the grounds that a municipality's limited liability is only waived when the municipality purchases insurance in excess of that liability.

Affirmed.